**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PEANUTS WORLDWIDE LLC, | |
| Plaintiff, | Case No. 21-cv-00632 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiff Peanuts Worldwide LLC ("Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks and/or unauthorized copies of Plaintiff's federally registered copyrighted designs (collectively, the "Unauthorized Peanuts Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale Unauthorized Peanuts Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized Peanuts Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted designs, as well as to protect unknowing consumers from purchasing Unauthorized Peanuts Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment

of its valuable trademarks and infringement of its copyrighted designs as a result of Defendants'

actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.      Plaintiff Peanuts Worldwide LLC is a Delaware limited liability company having

its principal place of business at 352 Park Avenue So. FL 8, New York, NY 10010.

5.      Over seventy years ago, Charles M. Schulz introduced a brand-new comic strip

with an unlikely round-headed hero, "Good ol' Charlie Brown," and the PEANUTS comic strip

was born.  From its humble beginnings in just seven U.S. newspapers, the PEANUTS comic strip

grew to a syndicated daily and Sunday comic strip that ran from October 2, 1950, to February 13,

2000, and it continues in reruns.  The PEANUTS comic strip is not only one of the best-loved

comic strips in history, but a true global phenomenon.

6.      Some of the characters and character names made famous by the PEANUTS comic

strip are:



7.     Today, the PEANUTS comic strip is featured in global online syndication and in thousands of newspapers worldwide; in classic television specials and in new streaming series; and in mobile apps, stage productions, feature films, and books.  PEANUTS has also inspired theme park attractions and public art projects.  In 2018, Plaintiff partnered with NASA on a multi-year Space Act Agreement designed to inspire a passion for space exploration and STEM among the next generation of students with new original streaming series starring Astronaut Snoopy to

4

in-school STEM-based curriculum about America's latest explorations into deep space.  For fans everywhere, happiness *is* PEANUTS.

8.    In addition to episode DVDs of the classic television specials and PEANUTS comic strips, a variety of licensed PEANUTS products are available, including:  games and other toys such as playsets, playing cards, and stuffed toys; household items such as holiday ornaments, bathroom products, stationery and bed linens; clothing and jewelry (collectively, the "PEANUTS Products").

9.    PEANUTS Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine PEANUTS Products are instantly recognizable as such.  The PEANUTS brand has become a global success that resonates with children worldwide, and PEANUTS Products are among the most recognizable in the world.  PEANUTS Products are distributed and sold to consumers through retailers throughout the United States, including Illinois.

10.    Long before Defendants' acts described herein, Plaintiff (through its predecessor-in-interest United Feature Syndicate Inc. and licensees) launched the PEANUTS comic strip and television show and its related line of PEANUTS Products bearing its famous PEANUTS mark, SNOOPY mark, CHARLIE BROWN mark, and various copyrighted designs (the "Peanuts Copyrighted Designs").

11.    Plaintiff (through its predecessor-in-interest United Feature Syndicate Inc. and licensees) has used the PEANUTS and other trademarks for many years and has continuously sold products under PEANUTS and other trademarks (collectively, the "PEANUTS Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the PEANUTS Trademarks.  Plaintiff's use of the marks has also built substantial goodwill in and to

5

the PEANUTS Trademarks.  The PEANUTS Trademarks are famous marks and valuable assets of Plaintiff.  PEANUTS Products typically include at least one of the registered PEANUTS Trademarks and/or the Peanuts Copyrighted Designs.

12.     Several of the PEANUTS Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 1,255,304 | PEANUTS | For: address books; books (including coloring books); datebooks; greeting cards; growth charts made of paper; invitations; memo pads; nametags made of paper; paintbrushes; paper napkins; pencils; pencil boxes and cases; place cards made of paper; playing cards; telephone list books; wrapping paper for gifts; writing paper and envelopes; and writing tablets in class 016. |
| 1,265,839 | PEANUTS | For: Christmas decorations and ornaments; dolls; playsets; puzzles in class 028. |
| 1,301,542 | PEANUTS | For: music boxes in class 015. |
| 1,729,501 | PEANUTS | For: clothing; namely, infant boys' and girls' creepers, leggings, shorts, jackets, tops, boys' tops, shorts, tank tops, fleece tops, pants, pajamas, jackets, shorts, and socks; girls' shorts, tops, creepers, jumpers, socks and hosiery in class 025. |
| 1,970,335 | PEANUTS | For: bed linen, namely bedspreads, blankets, comforters, pillowcases, pillow shams, and sheets in class 024. |
| 4,017,645 | PEANUTS | For: pre-recorded DVDs featuring animated characters; pre-recorded CDs featured animated character voices; films featuring animated characters; computer game programs, computer game software, video games, namely, video game software, video game cartridges and video game discs; downloadable television shows featuring animated characters in class 009. |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| | | For: continuing animated programs distributed over television, satellite, audio, video media, the internet and worldwide web in class 041. |
| 4,429,043 | PEANUTS | For: motion picture films featuring animated cartoons; downloadable motion pictures featuring animated cartoons; downloadable music in class 009. |
| 5,023,666 | PEANUTS | For: porcelain commemorative plates in class 021. |
| 5,392,411 | PEANUTS | For: bags, namely, purses, tote bags, backpacks, book bags, school bags, diaper bags, duffel bags, messenger bags, overnight bags, sling bags, luggage, luggage tags, travels bags and garment bags for travel, cosmetic bags sold empty, toiletry bags sold empty, cinch sacks in the nature of drawstring bags used as backpacks, wristlet bags, wallets, change purses, leather and imitation leather key chains, umbrellas; pet clothing; pet accessories, namely, leashes, collars in class 018. |
| 1,254,632 | SNOOPY | For: games and toys; ornaments and decorations for Christmas trees in class 028. |
| 1,256,819 | SNOOPY | For: jewelry, watches, and clocks in class 014. |
| 1,256,900 | SNOOPY | For: luggage and totebags in class 018. |
| 1,256,970 | SNOOPY | For: athletic jerseys, aprons, bibs, coats, footwear, gloves, hats, jackets, jogging suits, mittens, nightgowns, nightshirts, pajamas, t-shirts, tank tops, shorts, socks, sweatshirts, and underwear in class 025. |
| 1,267,166 | SNOOPY | For: picture frames in class 020. |
| 1,268,857 | SNOOPY | For: adhesive bandages in class 005. |
| 1,286,055 | SNOOPY | For: drinking glasses, glass mugs, ceramic mugs, decorative ceramic storage containers for miscellaneous items, and toothbrushes in class 021. |
| 1,300,520 | SNOOPY | For: books, writing paper and envelopes, paint brushes, playing cards, printed instructional and teaching materials, crayons, felt-tip markers, |

| Registration No. | Trademark | Goods and Services |
|---|---|---|
|  |  | pencils, erasers, paper lunchbags, calendars, drawing paper and tablets, and memo pads in class 016. |
| 2,492,720 | SNOOPY | For: gummy candies in class 030. |
| 4,145,986 | SNOOPY | For: pre-recorded DVDs, pre-recorded CDs, motion picture films for television featuring animated characters; computer game programs; computer game software; video game programs; video game discs; and video game software in class 009. |
| 5,218,767 | SNOOPY | For: motion picture films featuring children's entertainment; downloadable motion pictures featuring children's entertainment in class 009. |
| 5,214,344 | CHARLIE BROWN | For: motion picture films featuring animated cartoons; downloadable motion pictures featuring animated cartoons; downloadable music, ringtones and electronic games via the internet and wireless devices in class 009. |

13.     The above U.S. registrations for the PEANUTS Trademarks are valid, subsisting, and in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the PEANUTS Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the PEANUTS Trademarks pursuant to 15 U.S.C. § 1057 (b). True and correct copies of the United States Registration Certificates for the above-listed PEANUTS Trademarks are attached hereto as **Exhibit 1**.

14.     The PEANUTS Trademarks are distinctive when applied to the PEANUTS Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.  Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that products bearing the PEANUTS Trademarks are manufactured to the highest quality standards.

8

15.     The PEANUTS Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned.  The innovative marketing and product designs of the PEANUTS Products have enabled the PEANUTS brand to achieve widespread recognition and fame and have made the PEANUTS Trademarks some of the most well-known marks in the toy and children's entertainment industries.  The widespread fame, outstanding reputation, and significant goodwill associated with the PEANUTS brand have made the PEANUTS Trademarks valuable assets of Plaintiff.

16.     Plaintiff has expended substantial time, money, and other resources in advertising and promoting the PEANUTS Trademarks.  In fact, Plaintiff has expended millions of dollars in advertising, promoting and marketing featuring the PEANUTS Trademarks.  PEANUTS Products have also been the subject of extensive unsolicited publicity resulting from their fame and high-quality, innovative designs.  As a result, products bearing the PEANUTS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff.  PEANUTS Products have become among the most popular of their kind in the U.S. and the world.  The PEANUTS Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  As such, the goodwill associated with the PEANUTS Trademarks is of incalculable and inestimable value to Plaintiff.

17.     Genuine PEANUTS Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the PEANUTS brand.

18.     Plaintiff has registered its Peanuts Copyrighted Designs with the United States Copyright Office.  The registrations include, but are not limited to: "Peanuts" (U.S. Copyright Registration No. B 197-759), issued by the Register of Copyrights on February 18, 1977 and

renewed as RE 723-431 on February 20, 1996; "Peanuts; sculpture. By Determined Productions, Inc." (U.S. Copyright Registration No. GP 59-162), issued by the Register of Copyrights on January 12, 1968 and renewed as RE 753-956 on April 8, 1997; and "Colorful World of Snoopy, Linus, Schroeder, Lucy and Charlie Brown" (U.S. Copyright Registration No. A 95-985), issued by the Register of Copyrights on October 1, 1968 and renewed as RE 738-848 on November 21, 1996. A true and correct copy of the record from the U.S. Copyright Office website for the above-referenced Peanuts Copyrighted Designs is attached hereto as **Exhibit 2**.

19.     Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Peanuts Copyrighted Designs to the public.

**The Defendants**

20.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

21.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their

counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

22.     The success of the PEANUTS brand has resulted in its significant counterfeiting. Consequently, Plaintiff has a worldwide brand protection program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized Peanuts Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 3**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

23.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office

of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186–187.

24. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized Peanuts Products to residents of Illinois.

25. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use

any of the PEANUTS Trademarks or copy or distribute the Peanuts Copyrighted Designs, and none of the Defendants are authorized retailers of genuine PEANUTS Products.

26.     Many Defendants also deceive unknowing consumers by using the PEANUTS Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PEANUTS Products.  Other e-commerce stores operating under Seller Aliases omit using the PEANUTS Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for PEANUTS Products.

27.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based e-commerce platforms.   On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

28.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Peanuts Products.  Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating

under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Peanuts Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Peanuts Products were manufactured by and come from a common source and that Defendants are interrelated.

30.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

31.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

32.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Peanuts Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have

jointly and severally, knowingly and willfully used and continue to use the PEANUTS Trademarks and/or copies of the Peanuts Copyrighted Designs in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Peanuts Products into the United States and Illinois over the Internet.

33.     Defendants' unauthorized use of the PEANUTS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Peanuts Products, including the sale of Unauthorized Peanuts Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered PEANUTS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The PEANUTS Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from PEANUTS Products offered, sold or marketed under the PEANUTS Trademarks.

36.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the PEANUTS Trademarks without Plaintiff's permission.

37.     Plaintiff's United States Registrations for the PEANUTS Trademarks (Exhibit 1) are in full force and effect.  On information and belief, Defendants have knowledge of Plaintiff's

15

rights in the PEANUTS Trademarks, and are willfully infringing and intentionally using infringing and counterfeit versions of the PEANUTS Trademarks. Defendants' willful, intentional and unauthorized use of the PEANUTS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Peanuts Products among the general public.

38. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the PEANUTS Trademarks.

40. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Peanuts Products.

## COUNT II
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

41. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

42. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Peanuts Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Peanuts Products by Plaintiff.

43. By using the PEANUTS Trademarks in connection with the sale of Unauthorized Peanuts Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Peanuts Products.

16

44.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Peanuts Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of the PEANUTS brand.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)

46.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47.     Plaintiff is the owner of valid and enforceable Peanuts Copyrighted Designs, which contain certain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq*.

48.     Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Peanuts Copyrighted Designs.

49.     Defendants do not have any ownership interest in the Peanuts Copyrighted Designs. Defendants had access to the Peanuts Copyrighted Designs via the internet.

50.     Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Peanuts Copyrighted Designs on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Peanuts Products.  Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Peanuts Copyrighted Designs. Such conduct infringes and continues to infringe the Peanuts Copyrighted Designs in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

51.     Defendants reap the benefits of the unauthorized copying and distribution of the Peanuts Copyrighted Designs in the form of revenue and other profits that are driven by the sale of Unauthorized Peanuts Products.

52.     Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Peanuts Products that capture the total concept and feel of the Peanuts Copyrighted Designs.

53.     On information and belief, Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to Plaintiff's rights.

54.     Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

55.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Peanuts Copyrighted Designs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)  That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the PEANUTS Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PEANUTS

Product or is not authorized by Plaintiff to be sold in connection with the PEANUTS Trademarks;

b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Peanuts Copyrighted Designs in any manner without the express authorization of Plaintiff;

c. passing off, inducing, or enabling others to sell or pass off any product as a genuine PEANUTS Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the PEANUTS Trademarks and/or the Peanuts Copyrighted Designs;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Peanuts Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e. further infringing the PEANUTS Trademarks and/or the Peanuts Copyrighted Designs and damaging Plaintiff's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the PEANUTS Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Peanuts Copyrighted Designs;

19

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the PEANUTS Trademarks and/or which bear the Peanuts Copyrighted Designs;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the PEANUTS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PEANUTS Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Peanuts Copyrighted Designs, Plaintiff is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 3rd day of February 2021.     Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson Martin
Isaku M. Begert
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
ibegert@gbc.law

*Counsel for Plaintiff Peanuts Worldwide LLC*